# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA STANLEY, | Case No.: 16cv1227-MMA (AGS) |
| Plaintiff, | **ORDER DENYING AS MOOT DEFENDANTS' MOTION TO EXCLUDE EXPERT MEDICAL OPINION TESTIMONY BY PLAINTIFF'S EXPERT** |
| v. | |
| COUNTY OF SAN DIEGO; and ALEXANDER BRUST, | [Doc. No. 24] |
| Defendants. | **DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| | [Doc. No. 25] |

On May 22, 2016, Plaintiff Donna Stanley ("Plaintiff") filed her Complaint against individual Defendants Alexander Brust and Roland Garza[1], and the County of San Diego ("County"). *See* Doc. No. 1 (hereinafter "Complaint"). Plaintiff alleges claims for: (1) excessive force in violation of her Fourth Amendment rights under 42 U.S.C. § 1983; (2) Negligence; (3) Battery; and (4) and a violation of her rights under California Civil Code

---

[1] On August 28, 2017, pursuant to the parties' joint motion to dismiss, the Court dismissed Defendant Garza from the instant action with prejudice. *See* Doc. No. 23.

§ 52.1.[2]  *See id.*  Defendants Brust and the County (collectively, "Defendants") move for summary judgment on all of Plaintiff's claims, or, in the alternative, partial summary judgment.  *See* Doc. No. 25.  Plaintiff filed an opposition, to which Defendants replied.  *See* Doc. Nos. 27, 32.  Defendants also filed a *Daubert* motion, and seek to exclude testimony from Plaintiff's police practices and procedures expert, Mr. Smith, regarding the "medical orthopedic causation of Plaintiff's alleged injuries that she attributes to Deputy Brust."  Doc. No. 24-1 at 1.  Plaintiff filed an opposition, to which Defendants replied.  *See* Doc. Nos. 28, 31.

The Court found the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  For the reasons set forth below, the Court **DENIES AS MOOT** Defendants' *Daubert* motion (Doc. No. 24), and **DENIES** Defendants' motion for summary judgment, or in the alternative, partial summary judgment (Doc. No. 25).

## BACKGROUND[3]

This action arises out of events occurring on July 2, 2015, when Defendant Brust, a San Diego County Sherriff's deputy, arrived with several other deputies to the residence of Plaintiff's adult son, Donald Stanley.  On that day, Deputy Brust and the other deputies attempted to arrest Mr. Stanley pursuant to a domestic violence arrest warrant.  When the deputies arrived, Mr. Stanley walked into his house and refused to let the deputies into his house without a warrant.  The deputies did not have a copy of the warrant with them.  A struggle between Mr. Stanley and the deputies ensued through a broken window of the

---

[2] Plaintiff brings her excessive force cause of action solely against Defendant Brust.  Plaintiff brings the remaining causes of action against both Defendant Brust and the County of San Diego.  *See* Complaint.

[3] These material facts are taken from the parties' separate statements of undisputed facts and pertinent cited exhibits.  The Court notes that the overwhelming majority of facts are disputed by the parties.  Disputed material facts are discussed in further detail where relevant to the Court's analysis as it relates to a specific cause of action.  Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

residence, leading one deputy to pepper spray Mr. Stanley through the window.

Once inside the residence, Mr. Stanley telephoned Plaintiff, his mother, who was seventy-three years old at the time, to inform her of the situation.[4] Plaintiff decided to drive to the property to inquire about what was going on. Upon arrival, Plaintiff observed at least three marked police vehicles in front of Mr. Stanley's home, and approximately five to seven deputies standing near a front window of the residence. Plaintiff parked her car in the driveway, and exited the vehicle.

The parties dispute what happened next. Plaintiff claims that she took several steps toward the house, at a slow pace, when Deputy Brust grabbed Plaintiff's right wrist. Deputy Brust contends that he instructed Plaintiff to stay back from the residence. Deputy Garza assisted Deputy Brust, and grabbed Plaintiff's left arm. Defendants claim that Deputy Garza informed Plaintiff that she needed to stay back for safety reasons. Plaintiff claims that during this time, neither deputy said anything to her or ordered her to do anything.

Deputies Brust and Garza placed Plaintiff's hands behind her back in rear wrist locks and escorted Plaintiff away from the residence, near the sidewalk. Plaintiff asserts that during this time, Deputy Brust pulled her around, twisting her right arm and wrist, causing her severe pain. Once the deputies walked Plaintiff away from the residence, Plaintiff claims Deputy Garza removed his grip on her left hand, while Deputy Brust "yanked [Plaintiff's] right hand and arm upward behind her with great force." Doc. No. 27-3 (hereinafter "Stanley Decl.") ¶ 10. Plaintiff asserts she was being cooperative at the time, and did not say or do anything "resistive or threatening." *Id.* ¶ 9. The deputies did not attempt to handcuff Plaintiff, nor did the deputies ever indicate that Plaintiff was under arrest. Sergeant Scroggins then approached Plaintiff to speak with her, and Deputy Brust released his grip on Plaintiff's arm.

With regards to Mr. Stanley, rather than forcing entry into the residence, the

---

[4] Plaintiff owns the duplex that Mr. Stanley lives in.

deputies elected to disengage, depart from the scene, and wait for a more opportune time and place to make the arrest.

When Plaintiff returned to her home, she claims she felt pain in her right wrist, arm, and shoulder. Plaintiff's doctor recommended an MRI of Plaintiff's shoulder. The MRI was performed on September 1, 2015, and revealed that Plaintiff had a torn rotator cuff. Plaintiff's primary doctor then referred Plaintiff to an orthopedic surgeon, Dr. Daniel Keefe, who diagnosed Plaintiff's injury as a "complete tear and retraction of the supraspinatus tendon" in Plaintiff's right shoulder. Doc. No. 27-4 (hereinafter "Dr. Keefe Decl."), Exh. 1. Plaintiff eventually elected to undergo surgery on her shoulder, which Dr. Keefe performed on February 26, 2016. The surgery "repaired the full thickness tear of the supraspinatus tendon in [Plaintiff's] right shoulder." Dr. Keefe Decl. ¶ 4.

As a result of Plaintiff's interaction with Deputy Brust, Plaintiff commenced the instant action asserting claims of excessive force, negligence, battery, and violations of California Civil Code § 52.1. *See* Complaint.

## DEFENDANTS' *DAUBERT* MOTION

Defendants move to exclude testimony by Plaintiff's police practices-and-procedures expert, Mr. Jack Smith, "regarding Plaintiff's alleged orthopedic condition, medical diagnosis, prognosis, or causation with respect to Plaintiff's alleged injuries." Doc. No. 24-1 at 4. Defendants seek to exclude such testimony because Mr. Smith is not a doctor, has no formal medical training, and has not reviewed Plaintiff's medical records. *See id.*

### 1. Legal Standard

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. As the Ninth Circuit recently explained:

Under *Daubert* and its progeny, including *Daubert* II, a district court's inquiry into admissibility is a flexible one. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted).

"[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id.* at 564 (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969-70.

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014). "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury." *Id.* at 1044.

## 2. <u>Analysis</u>

Defendants assert that they "anticipate" that Plaintiff will attempt to solicit opinion testimony from Mr. Smith regarding the "medical orthopedic causation of Plaintiff's alleged injuries that she attributes to Deputy Brust." Doc. No. 24-1 at 1. Notably, Defendants do not dispute Mr. Smith's qualifications as an expert in the field of police practices and procedures, nor do Defendants take issue with Mr. Smith's opinions regarding the tactics Deputy Brust used during his interaction with Plaintiff. Rather, Defendants seek to preclude Mr. Smith from offering any testimony "regarding Plaintiff's orthopedic condition, medical diagnosis, prognosis, or causation with respect to

Plaintiff's alleged shoulder injury." Doc. No. 31 at 3. In opposition, Plaintiff asserts Defendants' motion is moot because "Plaintiff does not intend to elicit any medical opinions from Mr. Smith." Doc. No. 28 at 2.

At his deposition, Mr. Smith testified that he "ha[s] an opinion" pertaining to what caused Plaintiff's shoulder injury. Doc. No. 24-2 at 9. However, based upon the excerpts of Mr. Smith's deposition testimony provided by Defendants, Mr. Smith did not actually state his opinion. When questioned by defense counsel about Plaintiff's injury, Mr. Smith testified as follows:

> A: Let's be clear. I'm not a medical doctor. I'm not giving you a medical opinion. I'm giving you an opinion based upon my expertise in police practices and procedures and being a person who has written policies and procedures concerning use of force and has examined all the issues that can occur, including injury by the use of certain police holds. That's my basis for my opinion.
>
> Q: Okay. So you're providing an opinion regarding the diagnosis of physical injury?
>
> A: No. That's up to - - that's a medical opinion. I'm not giving that.
>
> ***
>
> Q: Sir, that's a yes-or-no response. Are you offering a medical opinion about the prognosis of the injury?
>
> A: In this case, I'm not offering any medical opinion.
>
> Q: Okay. And you would agree you are not qualified to render a medical opinion; correct?
>
> A: I would agree.

Doc. No. 24-2 at 11-12.[5]

Here, the Court finds that Defendants' *Daubert* motion is moot for several reasons.

---

[5] All citations to this document refer to the pagination assigned by the CM/ECF system.

First, Defendants do not challenge Mr. Smith's qualifications to testify as an expert in the field of police practices and procedures, and how those practices and procedures relate to the case at bar. Second, Defendants repeatedly reference "the medical opinions [Mr. Smith] offered during his deposition," yet the cited excerpts reveal Mr. Smith did not actually state his opinion about what caused Plaintiff's injury. Doc. No. 31 at 1. Third, Plaintiff concedes that Mr. Smith did not include any medical opinions in his Rule 26 report, and agrees that he is not qualified to render a medical opinion. Finally, at his deposition, Mr. Smith testified that he is "not offering any medical opinion" about Plaintiff's shoulder injury. Doc. No. 24-2 at 12. The Court "cannot exclude testimony that [Mr. Smith] does not intend to offer[.]" *D'Agnese v. Novartis Pharm. Corp.*, 2013 WL 321773, at *17 (D. Az. Jan. 28, 2013); *see also Wood v. Robert Bosch Tool Corp.*, 2015 WL 5638040, at *3 (E.D. Mo. Sept. 24, 2015) (denying as moot the defendant's *Daubert* motion to the extent the motion addressed an opinion by the expert that the expert did not intend to offer). Accordingly, the Court **DENIES AS MOOT** Defendants' *Daubert* motion.[6]

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on all four of Plaintiff's causes of action. *See* Doc. No. 25-1. Alternatively, in the event the Court denies Defendants' motion for summary judgment, Defendants move for partial summary judgment as to Plaintiff's rotator cuff damage claim. *See id.* In opposition, Plaintiff asserts that summary judgment is inappropriate because "[t]his case presents two contradictory versions of the key facts." Doc. No. 27 at 1. The Court addresses Defendants' arguments in turn.

### 1. Legal Standard

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court

---

[6] The Court notes that Defendants can raise any additional issues pertaining to Mr. Smith's anticipated testimony via a motion in limine, if necessary.

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.), cert. denied, 555 U.S. 827 (2008) (quoting Fed. R. Civ. P. 56(e)).

## 2. **Analysis**

### a. **42 U.S.C. § 1983[7]—Excessive Force Claim against Deputy Brust and Qualified Immunity**

Defendants move for summary judgment on Plaintiff's claim for excessive force in violation of the Fourth Amendment against Deputy Brust on two grounds. First,

---

[7] "Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012). The parties do not dispute the state actor prong. As such, the Court's analysis focuses on the first prong—whether Plaintiff suffered a deprivation of a constitutional right.

Defendants assert that there are no material factual disputes as to whether the force used against Plaintiff was reasonable. Second, even if a factual dispute exists as to the amount of force used against Plaintiff, Defendants contend that Deputy Brust is entitled to qualified immunity.

### i. Excessive Force

A court must analyze a plaintiff's claim for excessive force under the Fourth Amendment's test for reasonableness. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Accordingly, a court must consider whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting the officers at the time. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1090-91 (9th Cir. 2013) *cert. denied*, 134 S. Ct. 1292 (2014). To assess whether an officer's actions were objectively reasonable, a court must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citation and internal quotation marks omitted). In other words, the reasonableness standard requires courts "to balance the amount of force applied against the need for that force." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003). In doing so, a court should consider "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect actively resisted arrest or attempted to escape." *Maxwell v. Cnty. of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012) (quoting *Graham*, 490 U.S. at 396). "Because this inquiry is fact-sensitive, summary judgment should be granted sparingly." *Id.*

### 1. Defendants' Version of the Facts

To meet their initial summary judgment burden under Rule 56, Defendants offer excerpts from the depositions of Deputies Brust, Ferguson, Meyers, Garza, and Sergeant Scroggins, all of whom were on duty on July 2, 2015, and present at Mr. Stanley's residence. Defendants also offer excerpts of Plaintiff's deposition and Dr. James Bried's independent medical evaluation report dated June 5, 2017.

According to Deputy Brust on the day in question, Plaintiff arrived at the scene and

was upset about the broken window and walked quickly toward the house. *See* Doc. No. 25-3 at 18-19.[8] Deputy Garza recalls Plaintiff was "yelling at all of us demanding [to know] what was going on with her son." *Id.* at 89. Deputy Brust informed Plaintiff that she "need[ed] to stay back," and that she "can't go up there." *Id.* at 19. Deputy Garza "[t]old [Plaintiff] to stay back, the situation is still unstable, [and] it's not safe for her to be this close." *Id.* at 89. Plaintiff did not stop walking, so Deputy Brust once more told Plaintiff to stop. Plaintiff did not stop, however, and "trie[d] to go past [Deputy Brust] and [Deputy Brust] grab[bed] onto her right wrist." *Id.* at 20. Deputy Garza then grabbed on to Plaintiff's left wrist. Deputies Brust and Garza moved Plaintiff's arms behind her back, placing her in a "wrist rear lock" hold. *Id.* at 89. Deputy Garza indicates Plaintiff was in the rear wrist lock position for "[p]robably less than 20 seconds[.]" *Id.* at 91.

Deputies Brust and Garza escorted Plaintiff to the end of the driveway, near the street. The deputies "[l]et go of her arms" because Plaintiff "was being compliant at that point." *Id.* at 24. Deputy Brust did not place handcuffs on Plaintiff; the deputies' main "goal was just to keep her away from the front of the house." *Id.* at 25. Sergeant Scroggins then spoke with Plaintiff.

## 2. Plaintiff's Version of the Facts

Plaintiff, however, paints a different picture of the events that transpired on July 2, 2015. In support of her opposition to Defendants' motion for summary judgment, Plaintiff offers the declarations of herself, Dr. Keefe, Plaintiff's police practices and procedures expert, Mr. Smith, and one of Plaintiff's attorneys, Mr. Joseph McMullen. Plaintiff also submits various excerpts of her own deposition testimony, in addition to that of Deputies Brust, Garza, Sergeant Scroggins, and Defendants' use-of-force expert, Marc A. Fox.

According to Plaintiff, on the day in question her son called her at approximately

---

[8] Citations to this document refer to the pagination assigned by the CM/ECF system.

12:00 p.m. and indicated that several officers arrived at his residence. Mr. Stanley asked that Plaintiff come to the house. When Plaintiff arrived, she parked in the driveway and observed "five to seven" deputies standing in front of the house. Doc. No. 27-12 at 13.[9] Plaintiff does not recall whether any deputy said anything to her before Deputies Brust and Garza grabbed her wrists. Nor does Plaintiff recall a deputy saying anything to her after taking hold of her wrists. *See id.* at 17-18. Additionally, Plaintiff claims that she did not yell, scream, or demand to know what was going on once she arrived at her son's house. *See id.* at 15.

The deputies began to escort Plaintiff down the driveway and away from the house. During this time Deputy Brust was "twisting" Plaintiff's wrist. *Id.* at 21. Plaintiff winced, stating "Ow, ow. You're hurting me. You're hurting me." *Id.* Plaintiff claims Deputy Brust continued "twisting my arm anyway, causing severe pain in my wrist and arm." Stanley Decl. ¶ 7. Plaintiff did not resist the deputies while they held her wrists. *See id.* ¶¶ 7-9. The deputies "did not say [Plaintiff] was under arrest or try to handcuff [Plaintiff]." *Id.* ¶ 9.

Once the deputies and Plaintiff reached the bottom of the driveway, near the rear of Plaintiff's parked car, the deputy who was holding on to Plaintiff's left arm released his grip (Doc. No. 27-12 at 25), while the deputy who was holding on to Plaintiff's right arm and "took [her] arm and pulled it up." (*Id.* at 23). Plaintiff elaborates, noting the deputy who held her right wrist, "yanked [her arm] up" behind her back with great force. *Id.* at 26-27. Plaintiff claims "the pain was so great that I began to cry." Stanley Decl. ¶ 10. Sergeant Scroggins approached and Deputy Brust "let go." Doc. No. 27-12 at 27. "Several times after this the sergeant and possibly other deputies asked if I wanted to be taken to the hospital, but I declined and told them I would go to my own doctor." Stanley Decl. ¶ 11.

/ / /

---

[9] Citations to this document refer to the pagination assigned by the CM/ECF system.

### 3. Whether Deputy Brust's Use of Force was Objectively Reasonable

As set forth in detail above, the parties have submitted contradicting evidence regarding the events surrounding Deputy Brust's use of force against Plaintiff on July 2, 2015. In resolving summary judgment motions, the Court may neither make credibility determinations nor weigh the evidence. *See Anderson*, 477 U.S. at 255; *see Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005) ("Summary judgment is an inappropriate vehicle for resolving claims that depend on credibility determinations."). Thus, the Court must determine whether construing the evidence in favor of Plaintiff, a reasonable jury could find by a preponderance of the evidence that the officer's use of force was objectively unreasonable. *See Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010).

Here, the Court finds that Plaintiff has made the requisite showing. According to Plaintiff, when she walked toward her son's residence, Deputies Brust and Garza came to her and grabbed her wrists. Plaintiff contends that she did not try to push past Deputy Brust, nor did Plaintiff say or yell anything. Moreover, Plaintiff claims that she does not recall Deputies Brust and Garza saying anything to her prior to taking hold of her wrists. Plaintiff did not resist the deputies in any way, and walked peacefully toward the end of the driveway with the deputies. While the deputies escorted Plaintiff to the end of the driveway, Deputy Brust twisted Plaintiff's arm. Plaintiff repeatedly cried out in pain. During this time, Plaintiff had committed no crime, nor was she under arrest. When Deputies Brust and Garza reached the end of the driveway with Plaintiff, Deputy Garza removed his hold on Plaintiff's left wrist. Deputy Brust then "yanked" Plaintiff's arm up behind her. There was no indication that Plaintiff posed an immediate safety threat. *See Erath*, 342 F.3d at 1061. In fact, Deputy Garza had already released his hold on Plaintiff's left wrist, and Deputy Brust admits Plaintiff "was being compliant at that point." Doc. No. 25-3 at 24.

In construing the facts in the light most favorable to Plaintiff, the need for force "was minimal at best," and a reasonable jury could find that Deputy Brust used an

unreasonable amount of force in twisting and yanking Plaintiff's right arm. *Erath*, 342 F.3d at 1061; *see also Price v. Sery*, 513 F.3d 962, 972 (9th Cir. 2008) ("If a reasonable person could side with the plaintiff's interpretation of events, the issue must survive for trial."). Accordingly, the Court finds that genuine issues of material fact exist as to whether Deputy Brust's use of force was objectively reasonable. *See Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) ("summary judgment or judgmnent as a matter of law in excessive force cases should be granted sparingly."); *Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994) ("[W]hether a particular use of force was reasonable is rarely determinable as a matter of law.").

### ii. *Qualified Immunity*

Defendants assert that even if a material fact exists regarding Deputy Brust's use of force against Plaintiff, Deputy Brust is nonetheless entitled to qualified immunity. "The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 905–06 (9th Cir. 2007) (internal citations omitted). The underlying purpose of this defense is "to strike a balance between the competing need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011).

To determine whether an officer is entitled to qualified immunity, the Court must conduct a two-part inquiry. First, the Court considers whether the facts, taken in the light most favorable to Plaintiff, demonstrate that the officers' actions violated the plaintiff's constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If so, the Court must determine whether the constitutional right was "clearly established in light of the specific context of the case" at the time of the events in question. *Mattos*, 661 F.3d at 440 (internal citation omitted). "For a right to be clearly established, case law must ordinarily

have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017) (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (explaining that "existing precedent must have placed the statutory or constitutional question beyond debate . . . [because] immunity protects all but the plainly incompetent or those who knowingly violate the law") (internal quotation marks and citation omitted)).

Here, the Court finds that Deputy Brust is not entitled to qualified immunity as to Plaintiff's excessive force claim. As discussed in the previous section, upon construing the facts in the light most favorable to Plaintiff, a reasonable jury could find that Deputy Brust used an unreasonable amount of force in restraining Plaintiff, thereby violating Plaintiff's Fourth Amendment rights. As such, the Court turns to whether Plaintiff's constitutional right was clearly established at the time of the events, "such that a reasonable officer would have understood his conduct to be unlawful in that situation." *Hughes v. Kisela*, 862 F.3d 775, 783 (9th Cir. 2016) (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)).

Determining whether a right was clearly established at the time of the incident "requires two separate determinations: (1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." *Green v. City and Cnty. of S.F.*, 751 F.3d 1039, 1052 (9th Cir. 2014). "Both are questions of law to be determined by the court in the absence of genuine issues of material fact." *Id.*

The first element is satisfied as a matter of law. At the time in question, the law was clear that use of force where either no force or minimal force is necessary violates that person's Fourth Amendment right to be free from force. *See, e.g.*, *Erath*, 342 F.3d at 1061 (concluding "it was objectively unreasonable and a violation of the Fourth Amendment for [the officer] to grab Bybee by the arms, throw her to the ground, and twist her arms while handcuffing her" where Bybee did not pose a safety risk and made

no attempt to leave the property); *P.B. v. Koch*, 96 F.3d 1298, 1303 n.4 (9th Cir. 1996) (noting that where there is no need for force, an individual's use of force is objectively unreasonable); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) ("[T]he officers used excess force on Hansen by unreasonably injuring her wrist and arm as they handcuffed her.").[10]  Thus, the remaining inquiry is whether, under the facts alleged, Deputy Brust could have reasonably believed that the force used was lawful under the circumstances. *See Green*, 751 F.3d at 1052 (citing *Torres*, 648 F.3d at 1127).

Regarding the second inquiry, according to Deputy Brust, Plaintiff failed to comply with the deputies' verbal commands and tried to push past them.  *See* Doc. No. 25-3 at 20.  As a result, Deputies Brust and Garza each grabbed one of Plaintiff's arms, placed them behind her back in rear wrist locks, escorted Plaintiff away from the residence to a safe location, and let go of Plaintiff.  *See id.* at 20-24.  However, there are disputed material facts here as to whether Plaintiff was, in fact, resisting the deputies' verbal commands or whether she tried to push past the deputies.  Moreover, there is conflicting evidence regarding how much force was actually used against Plaintiff.  Specifically, Plaintiff alleges Deputy Brust twisted her right wrist and "yanked" her right arm up behind her back.  *See* Stanley Decl. ¶¶ 7, 10.  Therefore, these material factual disputes "preclude a determination as to qualified immunity at the summary judgment stage." *Green*, 751 F.3d at 1052.

In sum, the Court finds that genuine issues of material fact exist regarding whether Deputy Brust's use of force was objectively reasonable.  As such, summary judgment on Plaintiff's excessive force claim is inappropriate.  The same factual disputes that preclude

---

[10]  Contrary to Defendants' assertion, *Shafer v. Padilla*, 868 F.3d 1110 (9th Cir. 2017) is inapposite.  The Ninth Circuit in *Shafer* held the officer was entitled to qualified immunity because the cases the plaintiff cited to as "clearly established law" did not involve "a challenging environment or an act of physical resistance or obstruction by the arrestee" when the "officer has probable cause to arrest" the individual for committing a crime of violence.  *Id.* at 1117-18.  Here, however, Plaintiff was not suspected of committing any crime, Plaintiff was never arrested, and Plaintiff did not present any threat to Deputy Brust.

summary judgment on Plaintiff's excessive force claim also preclude summary judgment on a qualified immunity defense. Accordingly, the Court **DENIES** Defendants' motion for summary judgment as to Plaintiff's Fourth Amendment excessive force claim.

### b. State Law Claims

In her remaining causes of action, Plaintiff alleges claims under California state law against both Deputy Brust and the County for negligence, battery, and a violation of California Civil Code § 52.1. Plaintiff's state law causes of action all stem from the same facts as her Fourth Amendment excessive force claim. With respect to the County, under federal law, "the County cannot be held vicariously liable for its deputies' acts of excessive force." *Cameron v. Craig*, 713 F.3d 1012, 1023 (9th Cir. 2013). The County may only be held liable if it adopted an unconstitutional policy or custom that resulted in the excessive force. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). California, however, has rejected the *Monell* rule and imposes liability on counties under the doctrine of respondeat superior for acts of county employees; it grants immunity to counties "only where the public employee would also be immune." *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) (citing Cal. Gov't Code § 815.2)). "Thus, should [plaintiff] prevail on her excessive force claim, liability could extend to the County." *Cameron*, 713 F.3d at 1023-24. The Court addresses Plaintiff's remaining causes of action in turn.

#### i. Negligence Claim against Deputy Brust and County

Plaintiff's second cause of action for negligence stems from the same facts as her Fourth Amendment excessive force claim. Plaintiff contends Deputy Brust and the County are liable because Deputy Brust was "negligent and breached [his] duty of care owed to Plaintiff," thereby injuring Plaintiff. Complaint ¶ 21. Defendants argue that under California law, Deputy Brust's conduct is privileged, "which therefore precludes tort liability even for negligence against Defendants." Doc. No. 25-1 at 10. In essence, Defendants assert that Deputy Brust acted reasonably; thus, Plaintiff's negligence claim fails. *See id.*

"In order to prove facts sufficient to support a finding of negligence, a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego*, 305 P.3d 252, 255 (Cal. 2013) (internal quotation marks and citations omitted). "Negligence claims stemming from allegations of excessive force by a police officer are . . . analyzed under the Fourth Amendment's reasonableness standard." *Carter v. City of Carlsbad*, 799 F. Supp. 2d 1147, 1164 (S.D. Cal. 2011) (citing *Atkinson v. Cnty. of Tulare*, 790 F. Supp. 2d 1188, 1211 (E.D. Cal. 2011) (noting that negligence is "measured by the same reasonableness standard of the Fourth Amendment.")). Police officers have a duty to act reasonably when using force, which "is determined in light of the totality of circumstances." *Id.* Thus, in order to succeed on her negligence claim, Plaintiff "must show that [Deputy Brust] acted unreasonably and that the unreasonable behavior harmed" her. *Price v. Cnty. of San Diego*, 990 F. Supp. 1230, 1245 (S.D. Cal. 1998).

Here, as set forth above, "[t]here are material factual disputes regarding the reasonableness" of Deputy Brust's actions. *Atkinson*, 790 F. Supp. 2d at 1211. Accepting Plaintiff's version of the facts as true, Deputy Brust is not entitled to summary judgment on Plaintiff's negligence claim. As such, the County is similarly not entitled to summary judgment. *See Robinson*, 278 F.3d at 1016; *see also Carter*, 799 F. Supp. 2d at 1165 ("Because Officer Merritt is not immune from Carter's negligence claim, neither is the City.").

Accordingly, the Court **DENIES** Defendants' motion for summary judgment as to Plaintiff's second cause of action for negligence against Deputy Brust and the County.

### ii. *Battery Claim against Deputy Brust and County*

Plaintiff's third cause of action for battery is also measured by the same reasonableness standard of the Fourth Amendment. *See Atkinson*, 790 F. Supp. 2d at 1211 (noting that battery is "measured by the same reasonableness standard of the Fourth Amendment."). Plaintiff alleges that Deputy Brust committed a battery by using

excessive force upon her.  *See* Complaint ¶ 23.  Defendant argues that "Deputy Brust's use of force complied with the Fourth Amendment reasonable standard;" thus, Plaintiff's battery claim fails as a matter of law.  Doc. No. 25-1 at 6.  In California, an "arresting officer may use such force as is reasonably necessary to effect a lawful arrest."  *Ting v. United States*, 927 F.2d 1504, 1514 (9th Cir. 1991).  However, a police officer commits battery when he uses excessive force.  *See Saman v. Robbins*, 173 F.3d 1150, 1157 n.6 (9th Cir. 1999).

Here, for the reasons set forth above, a jury could find that Deputy Brust's use of force in allegedly twisting Plaintiff's wrist and pushing Plaintiff's arm up behind her back was unreasonable and resulted in injury to Plaintiff.  Thus, Deputy Brust is not entitled to summary judgment on Plaintiff's battery claim.  Moreover, because a county is immune "only where the public employee would also be immune," the County is similarly not entitled to summary judgment on Plaintiff's battery claim.  *Robinson*, 278 F.3d at 1016; *see also Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010) ("Because the same standards apply to both state law assault and battery and Section 1983 claims premised on constitutionally prohibited excessive force, the fact that Plaintiff's § 1983 claims under the Fourth Amendment survive summary judgment also mandates that the assault and battery claims similarly survive.").

Accordingly, the Court **DENIES** Defendants' motion for summary judgment as to Plaintiff's third cause of action for battery against Deputy Brust and the County.

### iii.  *California Civil Code 52.1 Claim against Deputy Brust and County*

Plaintiff's fourth cause of action alleges that Defendants are liable under California Civil Code § 52.1 (the "Bane Act") for violations of her federal constitutional rights and rights protected by California law.  *See* Complaint ¶ 27.  Defendants argue that "Deputy Brust's conduct in responding to Plaintiff's obstructionist behavior cannot in and of itself also comprise any alleged constitutional inference that can give rise to section 52.1 liability; rather, the alleged conduct must be shown to have been committed for the purpose of interfering with some other constitutional right[.]"  Doc. No. 25-1 at 11-12.

"Section 52.1 permits an individual to bring a civil action for interference with his rights under the United States or California Constitutions by threats, intimidation, or coercion." *Carter*, 799 F. Supp. 2d at 1165 (citing *Venegas v. Cnty. of L.A.*, 63 Cal. Rptr. 3d 741, 747-48 (Cal. Ct. App. 2007)). "Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations." *Reynolds v. Cnty. of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996), *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). "When a § 52.1 claim is premised on the violation of a constitutional right, the court must look to the elements of the constitutional claim to determine whether the § 52.1 claim is meritorious." *Aquino v. Cnty. of Monterey Sheriff's Dep't*, 2016 WL 5946867, at *17 (N.D. Cal. Sept. 29, 2016), *aff'd in part* 698 F. App'x 901 (9th Cir. 2017).

Here, Plaintiff's § 52.1 claim is premised on Deputy Brust's alleged use of excessive force. *See* Complaint ¶ 27 (claiming Deputy Brust "violently twist[ed], pull[ed], and yank[ed] her wrists and arms," thereby injuring Plaintiff). Defendants' argument that Section 52.1 cannot apply to an excessive force claim absent a showing that the act was done to interfere with a separate constitutional right is misplaced. *See* Doc. No. 25-1 at 11-12. The Ninth Circuit has recently noted that "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1105 (9th Cir. 2014); *see also Cameron*, 713 F.3d at 1022 (noting that because the California right the plaintiff asserted was the same as the rights guaranteed by the Fourth Amendment, resolution of the plaintiff's excessive force claim under § 52.1 was the same as under the § 1983 claim). Thus, because Plaintiff's § 52.1 claim is premised upon her Fourth Amendment excessive force claim, and because a triable issue remains as to whether Deputy Brust's use of force in allegedly twisting Plaintiff's wrist and yanking Plaintiff's right arm up behind her back was unreasonable, summary judgment is improper.

Accordingly, the Court **DENIES** Defendants' motion for summary judgment as to Plaintiff's fourth cause of action against Deputy Brust and the County.

### c.  Rotator Cuff Injury and Damage Claim

Lastly, Defendants move to partial summary judgment as to "Plaintiff alleged torn right rotator cuff injury and corresponding damage claim." Doc. No. 25-1 at 13. Specifically, Defendants claim Plaintiff's "right shoulder damage claim fails as a matter of law because even assuming the placement and movement of Plaintiff's right arm behind her back as she described . . ., that arm maneuver could not have been the mechanism of injury for the right rotator cuff tear." *Id.* Plaintiff, in opposition, relies on the declaration of her orthopedic surgeon, Dr. Keefe, who opines that Plaintiff's torn rotator cuff injury "occurred during the incident in which Ms. Stanley's right arm was pulled behind her back and forcefully, internally rotated, causing pain in her right shoulder and periscapular area since then." Dr. Keefe Decl. ¶ 5. Defendants object to the declaration of Dr. Keefe. *See* Doc. No. 32 at 4-5. The Court first addresses Defendants' objection to the declaration of Dr. Keefe before turning to Defendants' motion for partial summary judgment as to Plaintiff's damage claim.

#### i.  *Defendants' Objection to the Declaration of Dr. Keefe*

In their reply brief, Defendants object to, and move to strike, Dr. Keefe's declaration because Plaintiff "failed to properly and timely disclose Dr. Keefe's expert opinions" pursuant to Federal Rules of Civil Procedure 26(a)(2)(B) or 26(a)(2)(C). Doc. No. 32 at 4. Specifically, Defendants take issue with Dr. Keefe's "opinion regarding causation for Plaintiff's injury" and asserts that Dr. Keefe's opinion was "not formed during the course of Plaintiff's treatment[.]" *Id.* at 5. Defendants further contend Dr. Keefe's causation opinion is "inadmissible because it lacks foundation and is speculative because it is based on faulty and incomplete information provided by Plaintiff to Dr. Keefe." *Id.*

Rule 26 requires that parties provide written disclosures for "any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed.

R. Civ. P. 26(a)(2)(A).  "If the expert is 'one retained or specially employed to provide expert testimony in the case or whose duties as the party's employee regularly involve giving expert testimony,' the disclosure must be accompanied by a written report[.]" *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 824 (9th Cir. 2011) (quoting Fed. R. Civ. P. 26(a)(2)(B)).  "If these witnesses are unretained, a party need only disclose the 'subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, 705' and 'a summary of facts and opinions to which the witness is expected to testify.'"  *Witman v. Knight Transp., Inc.*, 2016 WL 8715668, at *3 (S.D. Cal. Nov. 21, 2016) (quoting Fed. R. Civ. P. 26(a)(2)(C)).  The Rule 26(a)(2)(C) disclosures are "considerably less extensive" than those required for retained experts.  Fed. R. Civ. P. 26(a)(2) Advisory Committee's Note (2010).

"Generally, a treating physician is not 'retained or specially employed to provide expert testimony'—a treating physician is a percipient witness of the treatment he rendered—and therefore he is *not subject to the written report requirement*."  *Goodman*, 644 F.3d at 824 (quoting Fed. R. Civ. P. 26(a) Advisory Committee's Note (1993) (emphasis added)).

Here, the Court declines to rule on Defendants' objection, as the Court finds that it does not have sufficient information to determine whether Plaintiff properly complied with Rule 26.  In the Court's December 19, 2016 Scheduling Order, the assigned magistrate judge ordered the parties to "comply with the disclosure provisions in Rule 26(a)(2)(A) and (B) of the Federal Rules of Civil Procedure" by "**June 22, 2017**."  Doc. No. 12 at 2 (emphasis in original).  Because the June 22, 2017 deadline has passed, the parties have presumably exchanged such information as it relates to their respective Rule 26(a)(2)(A) and Rule 26(a)(2)(B) disclosures.  However, Defendants do not provide the Court with a copy of any such disclosures, nor do Defendants submit the declaration of counsel in support of their arguments.  Moreover, the fact that Dr. Keefe "wrote an opinion about events that occurred a year earlier is not conclusive evidence that he formed the opinion when he wrote it down."  *Everett v. Am. Gen. Life Ins. Co.*, 703 F.

App'x 481, 483 (9th Cir. 2017).  Dr. Keefe first met with Plaintiff in October 2015; thus, it is quite likely Dr. Keefe qualifies as a treating physician who is exempt from the written report requirement.  Dr. Keefe Decl. ¶ 2.  If Dr. Keefe formed this opinion during the course of his treatment, there is no Rule 26 violation.  As such, in the absence of any evidence, the Court **DECLINES** to determine whether Plaintiff violated her Rule 26 disclosure requirements.  To the extent Dr. Keefe's testimony remains an issue prior to trial, Defendants can raise the issue via a motion in limine.

Even assuming, however, that Plaintiff did not comply with her Rule 26 disclosure requirements, the Court would disregard only that portion of Dr. Keefe's declaration wherein Dr. Keefe opines on the causation of Plaintiff's injury.  Defendants' challenge to Dr. Keefe's declaration focuses solely on his causation opinion.  *See* Doc. No. 32 at 5-6. Defendants do not challenge the authenticity of Plaintiff's medical records attached as exhibits to Dr. Keefe's declaration, nor do Defendants claim Plaintiff failed to identify Dr. Keefe as a witness.  "If a party *fails to provide information* or identify a witness as required by Rule 26(a) or (e), *the party is not allowed to use that information* or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1) (emphasis added).  Thus, even assuming a Rule 26 violation occurred, Plaintiff would not be able to rely on that *information*—i.e., Dr. Keefe's opinion regarding the cause of Plaintiff's shoulder injury—to supply evidence on a motion or at trial.  As such, the Court relies on the remaining portions of Dr. Keefe's declaration, including the attached medical reports, in reaching its conclusion below regarding Plaintiff's rotator cuff damage claim.

Defendants further contend Dr. Keefe's causation opinion is inadmissible because it lacks foundation and is speculative.  *See* Doc. No. 32 at 5.  Defendants claim Dr. Keefe's opinion is based on incomplete information, because as noted in Dr. Keefe's October 29, 2015 consultation report, Plaintiff "denies any prior history of injury, surgery, or dislocation."  Doc. No. 27-4, Exh. 2 at 2-3.  The Court **OVERRULES** Defendants' objections on these grounds, as Dr. Keefe's opinions are based upon his

personal knowledge and physical examinations of Plaintiff. *See* Fed. R. Evid. 602. The jury can make any credibility determinations at trial based upon the proffered testimony of a witness or witnesses.

Accordingly, for the reasons set forth above, the Court **DECLINES** to rule on Defendants' objection to the declaration of Dr. Keefe on the grounds of a Rule 26 violation. *See Everett*, 703 F. App'x at 483 ("Because there is a genuine issue of fact regarding when [the doctor] formed his opinion, the issue should not have been decided on summary judgment."). The Court, however, **OVERRULES** Defendants' objections on the grounds of lack of foundation and speculation.

### ii. *Plaintiff's Rotator Cuff Damage Claim*

In support of their motion for partial summary judgment as to Plaintiff's rotator cuff damage claim, Defendants rely on the report of their medical expert, Dr. Bried. *See* Doc. No. 25-3 at 95-102. Dr. Bried examined Plaintiff on April 6, 2017. *See id.* at 96. In his report, Dr. Bried indicates that it is his opinion, "with reasonable medical certainty," that Deputy Brust's alleged movement of Plaintiff's right arm behind her back is inconsistent with the injury of a torn rotator cuff. *Id.* at 101. Dr. Bried notes that Plaintiff has a history of prior injury to her right shoulder. *See id.* at 102. In 2011, Plaintiff injured her right shoulder at work as a teacher's aide when reaching up to take down pictures off of the wall at the end of the school year. *See* Doc. No. 25-3 at 55-56. Dr. Bried opines that Plaintiff's use of her right hand "at and above the level of the shoulder" in 2011 "is the *likely* mechanism of tearing of her rotator cuff." *Id.* at 102 (emphasis added).

Dr. Keefe's opinion that Plaintiff's torn rotator cuff injury occurred when Deputy Brust forcefully pushed Plaintiff's right arm behind her back directly contradicts Dr. Bried's opinion. Yet, for the reasons discussed above, even if the Court declines to consider Dr. Keefe's opinion regarding causation, Dr. Bried's opinion, Plaintiff's testimony, and the medical reports attached to Dr. Keefe's declaration preclude summary judgment on this issue. For example, Dr. Bried only claims that Plaintiff's injury in 2011

"is the *likely* mechanism of tearing of her rotator cuff." Doc. No. 25-3 at 102 (emphasis added). Additionally, in her deposition, Plaintiff claims that when Deputy Brust "yanked" her right arm up behind her, she instantly "started crying." Doc. No. 27-12 at 27. Similarly, in her declaration, Plaintiff avers that the morning after her encounter with Deputy Brust, "the pain in my right shoulder was much worse and my right wrist and hand were painful and swollen, so I went to the emergency room at Tri-City Hospital." Stanley Decl. ¶ 14. Plaintiff continued to experience pain in her right shoulder, and her primary care physician recommended that she get an MRI. *See id.* ¶ 15. The MRI revealed Plaintiff had a torn rotator cuff. *See id.* Prior to her encounter with Deputy Brust, Plaintiff "had no experienced any pain in [her] right shoulder for nearly 18 months." *Id.* ¶ 13. Moreover, Dr. Keefe found that Plaintiff's MRI "did not show significant atrophy," which suggests a more recent event related to a rotator cuff tear. Dr. Keefe Decl. ¶ 5; *see also* Dr. Keefe Decl., Ex. 1 (noting "[t]here is mild to moderate atrophy of the supraspinatus muscle."). Finally, in his report dated October 29, 2015, Dr. Keefe notes that Plaintiff "was involved in an injury in which someone [forcibly] pulled her arm behind her back" on July 2, 2015. Dr. Keefe Decl., Ex. 2 at 1.

Thus, Defendants' claim that "there is no evidence to establish a causal link between Plaintiff's right rotator cuff tear and her interaction with Deputy Brust" is without merit. Doc. No. 25-1 at 13. Based upon the parties' submissions, genuine issues of material fact exist regarding the cause of Plaintiff's rotator cuff injury. Accordingly, the Court **DENIES** Defendants' motion for partial summary judgment on Plaintiff's rotator cuff damage claim.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

<u>**CONCLUSION**</u>

Based on the foregoing, the Court **DENIES AS MOOT** Defendants' *Daubert* motion to exclude the testimony of Mr. Smith.  Further, the Court **DENIES** Defendants' motion for summary judgment, or in the alternative, partial summary judgment.  The parties are instructed to contact the assigned magistrate judge within **<u>three (3) court days</u>** of the date this Order is filed to reschedule the previously vacated Mandatory Settlement Conference.

**IT IS SO ORDERED.**

Dated:  January 23, 2018

HON. MICHAEL M. ANELLO
United States District Judge